# 17- 2371 cr

# United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

JOSEPH VALERIO,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-
## APPELLANT JOSEPH VALERIO

FREEMAN, NOOTER & GINSBERG
*Attorneys for Defendant-Appellant
  Joseph Valerio*
75 Maiden Lane, Suite 503
New York, New York 10038
(212) 608-080

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ………………………………………………………..iii-v

INTRODUCTION…………………………………………………………………..1-2

ARGUMENT……………………………………………………………..…2-24

POINT I

    THE GOVERNMENT'S ATTEMPT TO DISTINGUISH
    *UNITED STATES v. DORVEE* IS REFUTED BY APPLICATION
    NOTES 1 AND 3 FOR U.S.S.G. § 5G1.2……………………………...2-7

POINT II

    THE GOVERNMENT HAS MISUNDERSTOOD AND/OR
    MISREPRESENTED THE HOLDINGS IN THIS COURT'S DECISIONS
    IN *HESTER* AND *ANSON*........................................................................7-10

POINT III

    ASSUMING *ARGUENDO* VALERIO'S TRIAL COUNSEL FAILED TO
    OBJECT TO THESE COUNTS, VALERIO'S CONVICTION UNDER
    COUNTS SIX, SEVEN, AND EIGHT IS SUBJECT TO REVIEW FOR
    PLAIN ERROR………………………………………………...…11-12

POINT IV

    THE COURT MAY REVIEW FOR PLAIN ERROR VALERIO'S
    ARGUMENTS REGARDING COUNTS TWO AND THREE………13-14

POINT V

    THE MERE FACT THAT INTERROGATION OCCURRED IN
    VALERIO'S HOME DOES NOT RENDER IT NONCUSTODIAL…15-17

POINT VI

    THE RECORD CONCLUSIVELY DEMONSTRATES THAT
    VALERIO WAS SUBECTED TO A TWO-STEP INTERROGATION
    PROCESSS………………………………………………………..18-19

POINT VII

    THE DISTRICT JUDGE HAD NO AUTHORITY TO PUNISH
    VALERIO FOR UNCHARGED CRIMES FOR WHICH HE HAS NOT
    BEEN CHARGED, TRIED, AND CONVICTED BY A JURY OF HIS
    PEERS………………………………………………………..20-24

CONCLUSION…………………………………………………………...24

CERTIFICATE OF COMPLIANCE……………………………...…………25

CERTIFICATE OF SERVICE……………………………………………26

# TABLE OF AUTHORITIES

**United States Supreme Court**

*Blakely v. Washington*,
     542 U.S. 296 (2004)……………………………………………………22-23

*Chiarella v. United States*,
     445 U.S. 222 (1980)………………………………………………..10

*Jones v. United States*,
     135 S. Ct. 8 (2014)…………………………………………………....20

*Michigan v. Summers*,
     452 U.S. 692 (1981)………………………………………………..17

*Miranda v. Arizona*,
     384 U.S. 436 (1966)………………………………………....2(n.1)

**United States Court of Appeals for the Second Circuit**

*United States v. Ali*,
     68 F.3d 1468 (2d Cir. 1995)………………………………………..15

*United States v. Anson*,
     304 F. App'x 1 (2d Cir. 2008)………………………..………………...7-8

*United States v. Badmus*,
     325 F.3d 133 (2d Cir. 2003)……………………………………….16

*United States v. Bayless*,
     201 F.3d 116 (2d Cir. 2000)…………………………………….…11-12

*United States v. Brown,*
　　352 F.3d 654 (2d Cir. 2003)……………………………………………11-13

*United States v. Capers,*
　　*627 F.3d 470* (2d Cir. 2010)……………………………………….19

*United States v. Dorvee,*
　　616 F.3d 174 (2d Cir. 2010)…………………………………………1-3, 7

*United States v. Fagans,*
　　406 F.3d 138, 141 (2d Cir. 2005)…………………………………....7

*United States v. Gore,*
　　154 F.3d 34 (2d Cir. 1998)……………………………………….....12

*United States v. Hester,*
　　674 F. App'x 31 *(2d Cir. 2016), cert. denied,* 137 S.Ct. 2203 (2017)…….7-8

*United States v. McLeod,*
　　251 F.3d 78 (2d Cir. 2001)…………………………………………..4

*United States v. Polouizzi,*
　　564 F.3d 142 (2d Cir. 2009)………………………………………....8

*United States v. Ulbricht,*
　　858 F.3d 71 (2d Cir. 2017) *petition for cert. filed*
　　(U.S. Dec. 22, 2017)………………………………...……21(n.2), 22

**Other United States Courts of Appeals**

*United States v. Bell,*
　　808 F.3d 926 (D.C. Cir. 2015)………………………………………21,23

*United States v. Briggs,*
　　820 F.3d 917 (8th Cir. 2016) *cert. denied,* 137 S. Ct. 617 (2017)………...20

**iv**

*United States v. Cassius*,
   777 F.3d 1093 (10th Cir.) *cert. denied*, 135 S. Ct. 2909 (2015)…………....20

*United States v. Davenport*,
   519 F.3d 940 (9th Cir. 2008)……………………………………………….8

*United States v. Miller*,
   *527 F.3d 54* (3rd Cir. 2008)………………………………………………8

*United States v. Sabillon-Umana*,
   772 F.3d 1328 (10th Cir. 2014)……………………………………………20

**Other Courts**
*Buck v. State*,
   181 Md. App. 585, 956 A.2d 884 (2008)………………………………..17

**Statutes**
18 U.S.C. § 2251(a)……………………………………………………….13
18 U.S.C. § 2251(c)…………………………………………………….13-14

**Other Authorities**
Morris B. Hoffman*, The Case for Jury Sentencing,*
   52 Duke Law Journal 951 (2003)………………………………….…..23

*Ulbricht v. United States*, No. 17-950 filed (U.S. Dec. 22, 2017),
   at pp. 24-32, available at
   http://www.scotusblog.com/casefiles/cases/ulbricht-v-united-states....21(n.2)

**INTRODUCTION**

Appellant Joseph Valerio submits the within Reply Brief to address numerous errors of fact and law in the Government's Brief.

In Point I, we show that Application Notes 1 and 3 for U.S.S.G. § 5G1.2 effectively refute the Government's attempt to distinguish *United States v. Dorvee*, 616 F.3d 174 (2 Cir. 2010), where a sentencing judge's confusion regarding the appropriate Guidelines benchmark or advisory sentence led this Court to remand for resentencing. In fact, remand for resentencing is warranted here because, as in *Dorvee,* the District Court was confused about the appropriate benchmark sentence for Mr. Valerio.

In Point II, we explain why the consecutive sentences imposed upon under Count Fifteen (possession of child pornography) and Count Five (receipt of child pornography) violate the Double Jeopardy Clause's prohibition against multiple punishments for the same offense.

In Point III, we argue that the same objection/rationale that led the District Court to dismiss Counts Nine through Thirteen applies to and warrants the vacation of his conviction on Counts Six, Seven, and Eight.

In Point IV, we review this Court's decisions recognizing its authority to review for plain error the issue of whether Valerio's convictions and the sentences

1

imposed upon Counts Two and Three violate the Double Jeopardy Clause because they charge essentially the same offense.

In Point V, we explain why interrogation of Mr. Valerio was custodial notwithstanding the fact that the interrogation occurred in Valerio's home.

In Point VI, we respond to the Government's efforts to explain away the overwhelming evidence that Valerio was subjected to a two-step interrogation process that warrants suppression of statements that Valerio made after he was finally given *Miranda* warnings.[1]

In Point VII, we respond to the Government's assertion that there is no support for Valerio's objection that the District Court erred by relying on uncharged assaults and rapes as a basis for imposing a *de facto* sentence of life imprisonment.

## ARGUMENT

## POINT I

### THE GOVERNMENT'S ATTEMPT TO DISTINGUISH *UNITED STATES v. DORVEE* IS REFUTED BY APPLICATION NOTES 1 AND 3 FOR U.S.S.G. § 5G1.2

The Government's attempt to distinguish *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) on the ground that *Dorvee* involved only a single count of conviction fails.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

In his opening brief at p. 61, Valerio argues (1) the District Court should have consulted U.S.S.G. § 5G1.1 and § 5G1.2 to ascertain the Guidelines benchmark or advisory sentence; (2) the District Court failed to do so; and (3) this error mirrors the mistake that led to a reversal in *Dorvee*

In response to this argument, the Government argues that Dorvee "was convicted of only one count and thus the multiple-count provisions of the Guidelines did not apply" to Dorvee.  Govt's Brief at pp. 64-65. The Government's argument incorrectly assumes that Valerio should be treated differently than Dorvee because Valerio was sentenced on multiple counts.  This argument is refuted by Application Note 3 to U.S.S.G. § 5G1.2, the very provision which governs sentencing on multiple counts of conviction.

Specifically, Note 3 (B) explains that the applicable guideline range on a specific count may be restricted by the statutorily authorized maximum sentence "**not only in a single-count case, see § 5G1.1, but also in a multiple-count case**." (emphasis supplied).

Moreover, Note 3 further provides that "where a statutorily authorized maximum sentence on a particular count is less than the minimum of the applicable guideline range, the sentence imposed on that count shall not be greater than the statutorily authorized maximum sentence on that count.  See § 5G1.1(a)."  The same rule applies regardless of whether the defendant is convicted of a single count

3

or multiple counts. As noted in our opening brief, the statutory maximum sentence for Valerio's most serious crimes of conviction is 30 years. Consequently, 30 years is the correct advisory or benchmark sentence for Valerio.

The Government suggests that this Court's decision in *United States v. McLeod*, 251 F.3d 78 (2d Cir. 2001) which sets forth a three-step analysis for imposing a sentence where there are multiple counts of conviction somehow changes matters. (Govt's Brief at p. 63). This claim is more than a little peculiar because the District Court explicitly stated that Valerio's:

> sentence was not driven by the guidelines in this case. Regardless of what the guidelines were, that number is not influencing me.

Appellant's Appendix Volume 2, at A-394.

In other words, the District Court's comments place the Government in the unenviable position of having to argue that the District Court's sentence comports with the Guidelines governing sentencing on multiple counts even though the District Court stated on the record that the Guidelines were not "influencing" the sentence imposed upon Valerio.

Furthermore, the 260-year advisory sentence upon which the District Court ultimately settled does not comport with the guidance provided in Application Note 1 for U.S.S.G. § 5G1.2, which provides in relevant part:

> Usually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total

4

> punishment as the sentence on that count. The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum, and be made to run concurrently with all or part of the longest sentence. If no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment.

Not surprisingly, the Probation Department found that in Valerio's case, the statutory maximum for the highest crime of conviction was adequate for the purposes of total punishment. Hence it initially recommended a sentence in the realm of 30 years.

Regrettably, the Government misrepresents the facts when it asserts that the District Court "adopted Valerio's position that the advisory Guidelines was the sum of the remaining counts – 260. (GA:70)." Govt's Brief at p. 36. The Government's claim takes out of context a footnote in a sentencing memorandum filed by defense counsel in response to the Government's claim in the District Court that 410 years should be used as a reference point for sentencing.

Defense Counsel's reference to 260 years occurs in a footnote in a letter memorandum – i.e., EDNY Docket No. 147, Sentencing Memorandum Supplement, Letter of Leonard Lato dated June 6, 2017 (hereinafter "LL"), at 2, n.2. In footnote 2 of that letter memorandum, defense counsel Lato pointed out: (1) if certain counts were dismissed because they merged into Count Two and (2) the remaining counts were stacked, as the Government argued they should be, that

5

would produce a "maximum statutory sentence" of 260 years." LL at 2 & n. 2. Defense counsel's observation is by no means a statement that he agreed with the Government's sentencing calculations, and it certainly is not an admission by defense counsel that 260 years was an appropriate advisory sentence or benchmark; it was merely a criticism of the Government's sentencing arithmetic. Furthermore, in the body of his letter, defense counsel Lato argues that the Probation Department's recommended sentence of sixty years was too lengthy to even provide guidance as to what would constitute an appropriate sentence. Thus, it is simply disingenuous for the Government to claim that defense counsel advocated a benchmark or advisory sentence of 260 years.

When Valerio was sentenced on June 6, 2017, the District Court remarked, "So Mr. Lato, I think correctly figured out the math which is the remaining counts have 260 years of exposure." Appellant's Appendix, Volume 2, at A-359; Government's Appendix at GA-70. This District Court's observation here was an allusion to footnote 2 in Mr. Lato's letter memorandum. Thus, the District Court's observation in no way establishes that defense counsel advocated 260 years as an appropriate benchmark or advisory sentence.

Finally, we note that the District Court's observation that its sentence was not influenced by the Guidelines does not excuse or render harmless its failure to conduct a proper Guidelines analysis. "[A]n incorrect calculation of the applicable

Guidelines range will taint not only a Guidelines sentence, if one is imposed, but also a non-Guidelines sentence, which may have been explicitly selected with what was thought to be the applicable Guidelines range as a frame of reference." *United States v. Fagans*, 406 F.3d 138, 141 (2d Cir.2005). *Accord*, *Dorvee*, 616 F.3d at 181-182.

## POINT II

### THE GOVERNMENT HAS MISUNDERSTOOD AND/OR MISREPRESENTED THE HOLDINGS IN THIS COURT'S DECISIONS IN *HESTER* AND *ANSON*

The sentence imposed under Count Fifteen (possession of child pornography) violates the Double Jeopardy Clause because it punishes Valerio a second time for conduct encompassed by Count Five (receipt of child pornography). In response, the Government asserts that two unreported cases – *United States v. Hester*, 674 F. App'x 31, (2d Cir. 2016), *cert. denied*, 137 S.Ct. 2203 (2017) and *United States v. Anson*, 304 F. App'x 1, 5-6 (2d Cir. 2008) – show this claim to be meritless. Govt's Brief at p. 78. Clearly, the Government has misunderstood or misstated the holdings in these cases.

In neither *Hester* nor *Anson* did this Court reject the proposition that possession of child pornography is – or can be – a lesser included offense of the crime of receiving child pornography. To the contrary, in *Hester* this Court assumed the correctness of this proposition. Moreover, although this Court has not

7

yet squarely held that possession of child pornography is a lesser included offense of receiving child pornography, this Court has stated that it finds persuasive the decisions in which sister circuits have reached that conclusion. *United States v. Polouizzi*, 564 F.3d 142, 159 (2d Cir. 2009)(finding "persuasive" the reasoning in *United States v. Davenport*, 519 F.3d 940, 943-44 (9th Cir. 2008) and *United States v. Miller*, 527 F.3d 54, 71-72 (3rd Cir. 2008)).

In *Anson*, as in *Hester*, this Court also assumed *arguendo* that the possession of child pornography is a lesser-included offense of receiving it. Anson's trial attorney, like Valerio's, did not request a jury instruction that might have prevented the jury from convicting Anson of possession based upon the same images that were the basis for his conviction for receipt of child pornography. Nevertheless, this Court remanded the case and directed the District Court to reconsider or explain its decision to impose a consecutive sentence on the possession count. *Anson, 304 Fed. Appx.* 1 *at \*6, 2008 U.S. App. LEXIS 22563* at *\*\*13*.

In Valerio's case, there is no plausible explanation for the consecutive sentences imposed upon Counts Five and Fifteen. Indeed, the Government's attempt to save the conviction on the possession count by arguing that different photographs underlay the conviction for receiving child pornography (Govt's Brief at p. 81-82) does not withstand scrutiny.

8

In essence, the Government argues that the receipt count (Count Five) is premised upon images of Kalichenko's daughter while the possession count (Count Fifteen) is based upon images of Valerio's niece on an SD card found in Valerio's home. This argument fails because this theory was not presented to the jury.

To the contrary, in its closing argument, the Government urged the jury to convict Valerio of Count Fifteen solely on the basis of the images of KS (Kalichenko's daughter) found on his computer:

> **And how do you know that he possessed it? Again, he asked for it; he got it; paid for it. It was all on the computer, and it was on the defendant's one on January 28, 2014, the day of the first search warrant. That's when the computer was taken.** That's what the indictment says as the date that the defendant possessed the child pornography involving both of the young girls. (T986). (emphasis supplied).

Note that the highlighted language specifies that the Government urged a conviction on the basis of images found on Valerio's **computer**. Conspicuously absent from this exhortation is any mention of the SD card.

The Government now asserts that the sentence – "That's what the indictment says as the date that the defendant possessed the child pornography involving both of the young girls." – is somehow a reference to the SD card containing images of Valerio's niece. See Govt's Brief at p. 81. However, no reasonable juror could construe this sentence as a reference to the SD card, especially since the indictment does not mention an SD card or his niece. Instead, the indictment contains the

9

nonspecific, indeed anonymous, reference to "depictions involving the use of one or more minors." Appellant's Appendix Volume 1, at A-35.

The Government also asserts that its opening statement informed the jury that the images on the SD card could be the basis for conviction on Count Fifteen. However, the excerpt from its opening statement quoted in the Government's brief also fails to show that the jury was told it could convict Valerio of possession based upon his possession of the SD card containing images of his niece. Again, conspicuously absent from the excerpt quoted in the Government's brief is any mention of the SD card:

> For the defendant's actions involving his niece here in Smithtown, he is charged with sexually exploiting a child. And the defendant is also charged with possessing child pornography.

Govt's Brief at p. 82, quoting GA-25.

Finally, Count Fifteen cannot be sustained on the basis of a theory never submitted to the jury via a proper jury instruction. *Chiarella v. United States*, 445 U.S. 222, 236-37 (1980). Ambiguous suggestions in the indictment and the prosecutor's opening and closing remarks are no substitute for the proper instructions." *Chiarella*, 445 U.S. at 239, 100 S.Ct. at 1120 (Brennan, J., concurring).

## POINT III

## COUNTS SIX, SEVEN, AND EIGHT
## SHOULD BE VACATED

Defense counsel raised the issue of multiplicity numerous times below. In one such discussion, defense counsel Lato stated:

> Before you leave, Your Honor, with respect to the multiplicity that you touched upon, if there is a conviction from the defense standpoint, we don't need to go into it; assuming conviction on the substantive counts, the attempts occur within the same time frame would have to be merged for sentencing. No reason to go into that.

Appellant's Appendix, Volume 1, at A-168-169.

The District Court replied that if Valerio "was convicted of the substantive count and the attempt counts, I would not be sentencing on the attempts, just the substantive." Moreover, the District Court stated that it would address defense counsel's concerns if the jury's verdict made it necessary for him to do so. Appellant's Appendix, Volume 1, at A-168-169.

The above quoted discussion, of course, precludes the Government's present argument that defense counsel waived multiplicity and/or Double Jeopardy Claims. In an abundance of caution, however, we note that this Court will "deem an error 'plain' where it is clear from the record that failure to object below was not the result of a strategic decision but rather "mere inadvertence or incompetence of trial counsel." *United States v. Brown*, 352 F.3d 654, 665 (2d Cir. 2003); *United States*

11

*v. Bayless*, 201 F.3d 116, 127, 128 & n. 2 (2d Cir. 2000). In addition, this Court will find plain error if the error is so "egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object." *Brown*, at 664-665, *quoting United States v. Gore*, 154 F.3d 34, 42-43 (2d Cir. 1998).

The same objection/rationale that led the District Court to dismiss Counts Nine through Thirteen applies to and warrants the vacation of his conviction on Counts Six, Seven, and Eight. No strategic advantage could be gained by not moving for their dismissal. Furthermore, the record is clear that defense counsel as well as the District Court were aware of the issues of multiplicity and double punishment. Indeed, at sentencing even the Government expressed concern as to whether the sentence the District Court ultimately imposed would stand if on appeal counts were vacated or deemed merged. See Appellant's Appendix, Volume 2, at A-358 (Government requests that dismissed counts should be reinstated if "some other count falls by the wayside"). In any event, the fact that Six, Seven, and Eight were not dismissed is so "egregious and obvious" an error as to make the trial judge "derelict in permitting it." *Id.* Consequently, those counts should be vacated and dismissed.

## POINT IV

## THE COURT MAY REVIEW FOR PLAIN ERROR VALERIO'S ARGUMENTS REGARDING COUNTS TWO AND THREE

The Government incorrectly asserts that the proposition that Section 2251(a) and Section 2251(c) are essentially the same crime is not reviewable as plain error because "the law in this Circuit remains silent on the issue." Govt's Brief at 78. However, as this Court observed in *United States v. Brown*, 352 F.3d at 664:

> 1) It is not always necessary for the party alleging plain error to cite a circuit or Supreme Court precedent precisely on point.
>
> 2) Error can be plain even where uniformity among the circuits, or among state courts, is lacking.
>
> 3) Error can be "plain" under well-settled legal *principles* even in absence of "legal precedents." (i.e. legal opinions).

Thus, *Brown* establishes that the absence of an opinion from this Court or another Court of Appeals does not preclude this Court from deciding whether Counts Two or Three should be vacated.

The Government also attempts to defeat Valerio's Double Jeopardy Claim by pointing out differences in the elements of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2251(c) that have no significance here. All that the Government's discussion establishes is that there are at least two different ways a person can violate

13

18 U.S.C. § 2251. However, that does not mean that subsection (a) and subsection (c) create two different offenses.

Given the factual allegations against Valerio, the Government could easily have chosen to proceed against him under § 2251(a) alone. In fact, since all of the conduct attributed to him occurred within the United States, Valerio could not have raised a claim that he could not be prosecuted under 18 U.S.C. § 2251(a) because he committed no acts within the territorial jurisdiction of the United States.

Conversely, because the Government alleged that Valerio was Kalichenko's co-conspirator and/or accomplice and her criminal activity occurred overseas, her conduct (which the Government imputed or attributed to Valerio) would have satisfied 18 U.S.C. § 2251(c)'s "requirement" that the prohibited conduct take place outside the United States.

To recapitulate, Counts Two and Three should not be treated as charging two separate and distinct crimes just because the statute provides for two different ways to violate 18 U.S.C. § 2251. Under the Government's theory of prosecution, Counts Two and Three are essentially the same offense, and are premised upon the same conduct, and the same victim. Consequently, a conviction and sentence upon both of these counts implicates the Double Jeopardy Clause's prohibition against multiple prosecutions for the same offense.

14

## POINT V

### THE MERE FACT THAT INTERROGATION OCCURRED IN VALERIO'S HOME DOES NOT RENDER IT NONCUSTODIAL

Normally, one's home is a far less intimidating environment than an interview room in a police station. However, the presence of nearly a dozen law enforcement agents is not a familiar sight in anyone's home or other place of residence. Nor do searches or interviews by law enforcement occur in homes with such frequency as to be an unremarkable occurrence. Indeed, none of this Court's decisions regarding questioning in a suspect's home deny the fact that the usually familiar and reassuring environment of a person's home can be transformed – as it was Valerio's case – into a police dominated atmosphere that warranted *Miranda* warnings.

Although not all interference with an individual's freedom of movement during the execution of a search warrant will suffice to render questioning custodial, when the loss of autonomy exceeds what is necessary to protect the agents executing the warrant, the questioning becomes custodial. *Cf. United States v. Ali*, 68 F.3d 1468, 1473 (2d Cir. 1995)(that agents were engaged in a limited stop of the sort authorized under *Terry v. Ohio*, 392 U.S. 1 (1968) was "irrelevant" to this Court's determination of whether *Miranda* warnings were required).

15

The Government ignores the obvious fact that isolation of Valerio in his dining room so that he could review e-mails and videos in Troyd's possession was not a protective measure for the benefit of the agents who were searching his home. Moreover, the Government's suggestion that Agent Troyd had e-mail transcripts and video in his possession simply to prepare him to conduct a search of Valerio's home (Govt's Brief at p. 52) is specious because Troyd himself did not search the premises but devoted himself exclusively to exercising control over Valerio and questioning him.

Both the Government and the District Court also ignore the fact that Valerio was never explicitly informed that he could leave. *Compare*, *United States v. Badmus*, 325 F.3d 133, 139 (2d Cir. 2003) (because the agents informed the defendant and his wife that they were not under arrest and could ask the agents to leave at any time, a reasonable person would have understood that he or she was not in custody).

No person in Valerio's circumstances – i.e., a person who has been told that his home is being searched for evidence of child pornography– would conclude that he was free to go on his merry way. To the contrary, even an innocent person would fear that leaving his home in such circumstances would cause law enforcement officers to treat him as a law breaker fleeing prosecution, or that his

16

departure would be regarded as evidence of consciousness of guilt. *Michigan v. Summers*, 452 U.S. 692, 701 (1981).

Moreover, even when "a suspect has been told by the police, clearly and unequivocally, that he is not under arrest and can leave at any time, but the contemporaneous conduct of the police has the effect of nullifying that advice, the advice 'will not carry the day.'" *Buck v. State*, 181 Md.App. 585, 626, 956 A.2d 884 (2008), quoting Wayne LaFave, Criminal Procedure (3rd ed. 2007)§ 66(d) at 737 n. 57. The occupation of his home by almost a dozen law enforcement agents – including the three agents who sat in such close proximity to Valerio in his dining room that he could not avoid or ignore their questions and Troyd's "request" that Valerio speak to him – clearly communicated to Valerio, as well as any other reasonable person in Valerio's circumstances, that Troyd wanted Valerio to stay put.

In summary, no reasonable person in the circumstances in which Valerio found himself, would have concluded that he was free to refuse Troyd's "invitation" to speak about the crimes that had resulted in the issuance of a search warrant for Valerio's home. Valerio was subjected to custodial questioning without first being given *Miranda* warnings.

17

# POINT VI

## THE RECORD CONCLUSIVELY DEMONSTRATES THAT VALERIO WAS SUBJECTED TO A TWO-STEP INTERROGATON PROCESSS

The Government posits the patently unbelievable claim that "nearly an hour of questioning passed before it dawned upon Special Agent Troyd that "Valerio had incriminated himself." Govt's Brief at p. 55. Actually, the pre-*Miranda* questioning lasted much longer than an hour. Troyd acknowledged in his suppression hearing testimony that a little over an hour and one-half had passed before Valerio received *Miranda* warnings. Appellant's Appendix Volume 1, at A-92. This testimony is no doubt accurate since Troyd also testified that agents entered Valerio's home at approximately 6:00 a.m. and the time noted on the advice of rights form Valerio eventually signed is 7:55 a.m. Appellant's Appendix Volume 1, at A-54 and A-116.

Could Troyd who, by the Government's own account had in his possession e-mail exchanges between Valerio and Kalichenko concerning child pornography as well as videos, have been so slow-witted that he would have had to question Valerio for ninety minutes before he (i.e., Troyd) realized that Valerio was implicated in criminal activity? Obviously, the Government's explanation for the lengthy (90-minute) questioning that occurred before Valerio received *Miranda* warnings defies credulity.

18

More importantly, assuming that Troyd was as slow-witted as the Government now suggests, there is no exception to *Miranda* that permits delaying the warnings until after police have satisfied themselves that they have probable cause to arrest the person they are questioning. *United States v. Capers,* 627 F.3d 470, 480-481 (2d Cir. 2010).

The Government also states disingenuously that after Troyd's epiphany concerning the existence of probable cause to arrest Valerio, Troyd's questioning "changed in scope and was for a limited duration." Govt's Brief at 56. Actually, the post-warning questioning concerned the same topics that were covered in the pre-warning questioning. One of the two e-mails about which Valerio was questioned after he received the *Miranda* warnings was the same e-mail about which he had been questioned before he received *Miranda* warnings. The other e-mail came from the same time frame. If the post-warning questioning was "limited in scope," it was only because Troyd had obtained all of the information he wanted before he finally advised Valerio of his rights pursuant to *Miranda*.

19

# POINT VII

## THE DISTRICT JUDGE HAS NO AUTHORITY
## TO PUNISH VALERIO FOR UNCHARGED CRIMES
## FOR WHICH HE HAS NOT BEEN CHARGED, TRIED, AND
## CONVICTED BY A JURY OF HIS PEERS

The Government incorrectly assumes that judicial precedent uniformly and unreservedly supports the District Court's imposition of a *de facto* life sentence largely on the basis of uncharged assaults and rapes. However, as then Circuit Judge Gorsuch has noted, it is "far from certain" whether the Constitution allows a district judge to "increase a defendant's sentence (within the statutorily authorized range) based on facts the judge finds without the aid of a jury or the defendant's consent." *United States v. Sabillon-Umana*, 772 F.3d 1328, 1331 (10th Cir. 2014) citing *Jones v. United States*, 135 S. Ct. 8 (2014)(Scalia, J. dissenting from denial of certiorari)(arguing that even if a judge's factual finding does not alter the proper statutory range, the finding is impermissible if the final sentence would be substantively unreasonable in absence of the finding). *See also United States v. Briggs*, 820 F.3d 917, 922 (8th Cir. 2016)(admitting that there is room for debate), *cert. denied*, 137 S. Ct. 617 (2017); *United States v. Cassius*, 777 F.3d 1093, 1099 n.4 (10th Cir.)(calling argument about judge-found sentencing facts "precluded by binding precedent" but citing *Jones*), *cert. denied*, 135 S. Ct. 2909 (2015).

Indeed, among federal jurists there is a growing recognition of an inherent conflict between (1) the line of cases cited in the Government's Brief concerning

20

the scope of information a sentencing judge may consider;[2] and (2) Fifth and Sixth Amendment provisions that provide a person cannot be convicted and punished for criminal behavior until after a jury has found him guilty of that behavior beyond a reasonable doubt.

As one member of the Court of Appeals for the District Columbia has noted, the whole reason the Constitution imposes a strict beyond a reasonable doubt standard:

> is that it would be constitutionally intolerable, amounting 'to a lack of fundamental fairness,' for an individual to be convicted and then 'imprisoned for years on the strength of the same evidence as would suffice in a civil case.' *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). In other words, proof beyond a reasonable doubt is what we demand from the government as an indispensable precondition to depriving an individual of liberty for the alleged conduct.

*United States v. Bell,* 808 F.3d 926, 930 (D.C. Cir. 2015) (Millett, C.J. concurring in the denial of rehearing en banc).

---

[2] See Govt's Brief at pp. 58-59 citing this Court's opinion in *United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017) as precedent supporting the District Court's use of uncharged rapes and assaults to impose a more severe sentence. Ironically, *Ulbricht* may eventually be the vehicle that vindicates Mr. Valerio's argument that the District Court erred by relying on uncharged crimes. Justice Ginsburg – who joined Justice Scalia's dissent in *Jones* – granted Ulrich's motion to file an untimely certiorari petition that raises the very same issue that Mr. Valerio has raised in this appeal. See *Ulbricht v. United States*, No. 17-950 filed (U.S. Dec. 22, 2017), at pp. 24-32, available at http://www.scotusblog.com/case-files/cases/ulbricht-v-united-states.

The very structure of the Constitution, moreover, imposes limits on the authority of a judge to sentence a person upon facts not found by a jury. As Justice Scalia stated in *Blakely v. Washington*, 542 U.S. 296, 305-306 (2004), the right to a jury trial is:

> a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary.

Once sentencing judges are permitted to impose punishment on the basis of facts not adjudicated by a jury, the jury ceases to function as the check against the expansion of judicial authority that the Framers intended. *Blakely*, 542 U.S. at 305-306.

The Government's focus on case law – specifically decisions like *United States v. Ulbricht*, 858 F.3d 71, 128 (2d Cir. 2017), *petition for cert. filed* (U.S. Dec. 22, 2017) and the cases cited therein – also ignores or overlooks ample historical precedent for the jury's role in sentencing.

As one jurist[3] has noted:

> from 1800 to 1900, juries imposed sentences in noncapital cases in about half of all the states. A handful of other states permitted juries in noncapital cases to make sentencing recommendations. Thus, for the entire nineteenth century, sentencing schemes with no input from the jury were the American exception, not the rule.

---

[3] When the article cited herein was published, the author of the article was a judge on the District Court of the State of Colorado.

22

Morris B. Hoffman, The Case for Jury Sentencing, 52 Duke Law Journal 951, 964 (2003) (footnotes omitted).

Expanded fact-finding by sentencing judges is largely a "vestigial historical accident," an integral part of an indeterminate sentencing regimen introduced in the 1920s and 1930s in which judges had far more discretion than they do in the current age of mandatory minimum sentences and various guideline or structured sentencing regimes. Hoffman, *The Case for Jury Sentencing*, 52 Duke Law Journal at 965.

In other words, sentencing laws and philosophies have changed. As a result of, or in reaction to these changes, the Supreme Court has in cases such as *Blakely* rediscovered the role that the Framers intended jurors to play in administering criminal justice, including at the sentencing or penalty phase of a trial. The precedents that the Government cites (Govt's Brief at pp. 59-60) and upon which the District Court relied are an anachronism.

As Judge Kavanaugh observed in his concurring opinion in *Bell*, 808 F.3d at 927-928:

> Taken to its logical conclusion, the *Blakely* approach would require a jury to find beyond a reasonable doubt the conduct used to set or increase a defendant's sentence, at least in structured or guided-discretion sentencing regimes. A judge could not rely on acquitted conduct to increase a sentence, even if the judge found the conduct proved by a preponderance of the evidence. A judge likewise could not rely on uncharged conduct to increase

a sentence, even if the judge found the conduct proved by
a preponderance of the evidence.

Because Mr. Valerio's sentence is premised upon uncharged conduct adjudicated not by a jury but a judge employing a preponderance of the evidence standard (instead of beyond a reasonable doubt as the Fifth Amendment requires), this Court should find that sentence fundamentally unfair and procedurally and substantively unreasonable.

**CONCLUSION**

**FOR THE REASONS STATED IN POINTS V AND VI HEREIN, AND POINTS I AND II IN VALERIO'S OPENING BRIEF, THIS COURT SHOULD REVERSE VALERIO'S CONVICTION AND SUPPRESS THE STATEMENTS ELICITED FROM HIM DURING THE SEARCH OF HIS HOME. FOR THE REASONS STATED IN POINTS I AND VII HEREIN, AND POINTS III AND IV, IN VALERIO'S OPENING BRIEF, THIS COURT SHOULD VACATE THE *DE FACTO* LIFE SENTENCE IMPOSED ON VALERIO AND REMAND THIS MATTER TO A DIFFERENT JUDGE FOR RESENTENCING. FOR THE REASONS STATED IN POINTS II, III, AND IV HEREIN AND POINT V IN VALERIO'S OPENING BRIEF, THIS COURT SHOULD TO VACATE THE SENTENCES IMPOSED UPON COUNTS THREE, SIX, SEVEN, EIGHT, AND FIFTEEN AND REMAND TO ANOTHER JUDGE WITH INSTRUCTIONS TO DISMISS THOSE COUNTS.**

Date: June 18, 2018                          Respectfully Submitted,

                                             /s/ Louis M. Freeman

                                             Freeman, Nooter & Ginsberg
                                             75 Maiden Lane, Suite 503
                                             New York, NY 10038
                                             Tel. No. 212-608-0808
                                             Attorneys for Appellant-Defendant

24

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 5475 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
       June 18, 2018

/s/ Louis M. Freeman

Louis M. Freeman

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

United States of America   v.

Joseph Valerio

**CERTIFICATE OF SERVICE**
Docket Number: 17-2371 cr

I, Nadjia Li mani _____, hereby certify under penalty of perjury that on
        (name)
June 18, 2018 _____, I served a copy of _____
        (date)
Reply Brief
_____
                                        (list all documents)

by (select all applicable)*

- [✓] United States Mail
- [ ] Federal Express
- [ ] Overnight Mail
- [ ] Facsimile
- [ ] E-mail
- [ ] Hand delivery

on the following parties (complete all information and add additional pages as necessary):

| Joseph Valerio, Reg. No. 83257-053 | USP TUCSON, U.S. PENITENTIARY P.O. BOX 24550 | Tucson | AZ | 85734 |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |

June 18, 2018
_____                    _____
Today's Date                                        Signature

*If different methods of service have been used on different parties, please indicate on a separate page, the type of service used for each respective party.

Certificate of Service Form

26